IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AERUS LLC, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | Civil Action No. 3:04-CV-1985-M |
| | § | |
| PRO TEAM, INC., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant's Motion to Dismiss, or in the Alternative, to Transfer for Improper Venue, filed on December 3, 2004. Having considered the motion, response, reply and the applicable law, the Court **GRANTS** in part and **DENIES** in part Defendant's Motion to Dismiss, or in the Alternative, to Transfer for Improper Venue.

**I.      Background**

Plaintiff Aerus LLC, formerly doing business as Electrolux, is a limited liability company with its principal place of business in Texas. Plaintiff manufactures and distributes cleaning equipment. Defendant ProTeam, Inc. is a corporation with its main corporate office in Idaho. Defendant develops and markets floor care products for the janitorial and sanitation industry. On July 1, 2001, the parties entered into a Marketing Agreement ("2001 Agreement"), which provided that Defendant would purchase, sell, market, and distribute Plaintiff's commercial floor care products. The 2001 Agreement also addressed use of Plaintiff's trademark and intellectual property. On May 12, 2003, the parties entered into the Termination, Transition, and Release

1

Agreement ("2003 Agreement"), terminating the 2001 Agreement. On September 10, 2004, Plaintiff filed suit against the Defendant, alleging the following claims: (1) Patent Infringement; (2) Breach of Contract; (3) Unauthorized Trademark Reproduction; (4) Infringement of Common Law Trade Dress Rights; and (5) Common Law Unfair Competition. On October 4, 2004, Defendant filed its Answer, generally denying Plaintiff's allegations and asserting that venue is improper in the Northern District of Texas. On December 3, 2004, Defendant filed the subject motion.

## II.     Analysis

Pursuant to 28 U.S.C. § 1406(a), Defendant moves to dismiss this case, or to transfer it to the Southern District of California, arguing the parties contractually agreed that the forum for their disputes would be San Diego, California.

This Court must determine whether an enforceable forum selection clause exists, and if so, what deference should be given to it. Federal law governs the determination of whether an enforceable forum selection clause exists. *Haynsworth v. The Corp.*, 121 F.3d 956, 962 (5th Cir. 1997). In this case, the Court must first determine which agreement (and which corresponding forum selection clause) governs: the 2001 Agreement or the 2003 Agreement. The Court will interpret these Agreements in accordance with Texas law to decide which controls. *See In re Dengel,* 340 F.3d 300, 313 (5th Cir. 2003) (quoting *F.D.I.C. v. Firemen's Ins. Co. of Newark, N.J.,* 109 F.3d 1084, 1087 (5th Cir. 1997)) (" We look to state law for rules governing contract interpretation.").

**A.      The Applicable Forum Selection Clause**

When construing a written contract, it is the court's primary concern "to ascertain the true intent of the parties as expressed in the instrument." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995); *see also J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). To the extent possible, provisions should be interpreted in a way that gives the entire agreement effect and "harmonizes potential conflicts between differing provisions." *New Concept Constr. Co. v. Kirbyville Consol. Indep. Sch. Dist.*, 119 S.W.3d 468, 470 (Tex. App. - Beaumont 2003, pet. denied). Parties to a contract are presumed to intend that each provision has meaning, and a clause will not be struck unless an irreconcilable conflict exists. *Id.* at 469.

Ambiguity is a question of law for the court to decide. *CBI Indus., Inc.*, 907 S.W.2d at 520. In determining whether a contractual provision is ambiguous, the court reviews the wording in light of surrounding circumstances "in order to ascertain the meaning that would be attached to the wording 'by a reasonably intelligent person acquainted with all operative usages and knowing all the circumstances prior to and contemporaneous with the making of the [contract], other than oral statements by the parties of what they intended to mean.'" *Watkins v. Petro-Search, Inc.*, 689 F.2d 537, 538 (5th Cir. 1982) (quoting *Sun Oil Co. v. Madeley*, 626 S.W.2d 726, 731 (Tex. 1981)). If the contract's wording has a definite or certain legal meaning, it is not ambiguous. *CBI Indus., Inc.*, 907 S.W.2d at 520. Even if an instrument is unambiguous, a trial court may admit extrinsic evidence, such as "parol testimony of the facts and circumstances surrounding or pertaining to the making of the agreement, in order that the court may apply the language used in the instrument to the facts and circumstances then existing for the purpose of ascertaining the

true intention of the parties." *Templeton v. Dreiss*, 961 S.W.2d 645, 657 n. 12 (Tex. App. - San Antonio 1998, pet. denied). If the language of the contract is subject to two or more reasonable interpretations in light of surrounding circumstances and after applying rules of contract construction, it is ambiguous, and the Court will resolve its meaning. *See Watkins*, 689 F.2d at 538; *Webster*, 128 S.W.3d at 229; *CBI Indus., Inc.*, 907 S.W.2d at 520.

Plaintiff argues that the 2001 and 2003 Agreements' provisions relating to venue and jurisdiction are "ambiguous at best," and that the forum selection clause therefore is not mandatory. Two provisions in the 2003 Agreement require examination. Section 2.1 of the 2003 Agreement states,

> With the sole exception of this Agreement, the Parties acknowledge and agree that any and all written or oral agreements between the Parties related to products or services are hereby terminated and are of no further force or effect (*except those provisions thereof that, by their terms, survive termination*).

(emphasis added). Section 5.13 states,

> This Agreement, including all Exhibits attached hereto, contains the entire agreement between the Parties as of the date concerning the subject matter hereof and supercedes [sic] any and all prior agreements, oral or written, between the Parties concerning the subject matter hereof . . . .

The parenthetical at the end of Section 2.1 is not present in Section 5.13.

By virtue of Section 5.7 of the 2001 Agreement ("survival clause"), "Sections 4.4, 5.6, and 6 through 20 will survive any termination or expiration of this Agreement." One of the surviving sections is Section 10, which states, "In the event [Aerus, LLC] asserts a breach or default by ProTeam under the terms of this Agreement, the jurisdiction, venue, and applicable law shall be the State of Texas, United States . . . ." Plaintiff argues that the forum selection clause in the 2001 Agreement is in conflict with the 2003 Agreement. Section 5.9 of the 2003

4

Agreement states:

> In the event either Party asserts a breach or default by the other under the terms of this Agreement, the jurisdiction, venue, and applicable law shall be [the] City of San Diego, California, United States of America, and this Agreement shall be deemed to have been signed at such location to the extent necessary for such jurisdiction and venue to apply.

The terms of the 2001 Agreement that allegedly survive termination would render the 2003 Agreement illogical and inconsistent.  For example, the dispute resolution and the forum selection clauses in the 2001 and 2003 Agreements are very similar, but they provide for completely different fora and applicable law.  If these provisions in the 2001 Agreement were intended to survive termination, then they would render conflicting provisions in the 2003 Agreement unenforceable.  Certain of these provisions, which the 2001 Agreement says survive are nonsensical in light of the 2003 Agreement.  For example, the 2001 Agreement, Section 20, states, "This Agreement, including Schedules attached hereto, contains the entire agreement between the parties as of the date concerning the subject matter hereof and supercedes [sic] any and all prior agreements."  Similar wording also exists in the 2003 Agreement.  Both provisions could not logically coexist.

Defendant argues that merger occurred, and therefore, no inconsistency exists.  "Merger refers to the absorption of one contract into another subsequent contract and is largely a matter of intention of the parties." *Fish v. Tandy Corp.*, 948 S.W.2d 886, 898 (Tex. App. - Fort Worth 1997, writ denied); *see also Superior Laminate & Supply, Inc. v. Formica Corp.*, 93 S.W.3d 445, 449 (Tex. App. - Houston [14th Dist.] 2002, pet. denied).  In order for one contract to be merged into another, the parties must be the same in both contracts, the last contract must address the same subject matter, and merger must have been intended by the parties.  *Smith v. Smith*, 794

5

S.W.2d 823, 828 (Tex. App. - Dallas 1990, writ withdrawn ).  "[A] subsequent integration will not supersede or invalidate a written agreement relating to the same subject matter if the agreement is such that [it] might naturally be made as a separate agreement." *Fish*, 948 S.W.2d at 899.  "However, if the parties to one contract execute another whose terms are so inconsistent with the first that they both cannot stand, the first agreement is conclusively presumed to have been superseded by the second." *Smith*, 794 S.W.2d at 828; *see also Willeke v. Bailey*, 144 Tex. 157, 160, 189 S.W.2d 477, 479 (1945); *Fish*, 948 S.W.2d at 899; *Leon Ltd. v. Albuquerque Commons P'ship*, 862 S.W.2d 693, 700 (Tex. App. - El Paso 1993, no writ); *Montgomery Elevator Co. v. Tarrant County*, 604 S.W.2d 363, 367 (Tex. App. - Fort Worth 1980, no writ). "An integration clause is in essence the merger doctrine memorialized." *Smith*, 794 S.W.2d at 828.

      The 2003 Agreement includes an integration clause in Section 5.13, which states, "[t]his Agreement . . . contains the entire agreement between the Parties as of the date concerning the subject matter hereof and supercedes [sic] any and all prior agreement, oral or written, between the Parties as of the date concerning the subject matter hereof . . ."  The parties explicitly set forth their intent that the 2003 Agreement constituted the entire agreement, and that it superseded any and all prior agreements.  Any language that survived termination merged into the 2003 Agreement, and to the extent it is inconsistent, the 2003 Agreement controls.  Thus, the Court finds that the 2003 Agreement is unambiguous, and its forum selection clause controls the Court's examination of where venue properly lies for this suit.

**B.      Mandatory Versus Permissive Forum Selection Language**

Having determined that the 2003 Agreement controls, the Court must determine whether the forum selection clause in the 2003 Agreement is mandatory (sometimes called "exclusive") or permissive.  "Where the agreement contains clear language showing that jurisdiction is appropriate only in a designated forum, the clause is mandatory."  *Von Graffenreid v. Craig*, 246 F. Supp. 2d 553, 560 (N.D. Tex. 2003) (citing *Excell, Inc. v. Sterling Boiler & Mech., Inc.*, 106 F.3d 318, 321 (10th Cir. 1997)); *Docksider, Ltd. v. Sea Tech., Ltd.*, 875 F.2d 762, 763-64 (9th Cir. 1989); *First Nat'l of N. Am., LLC v. Peavy*, No. 3-02-CV-0033-R, 2002 WL 449582, at *1 (N.D. Tex. Mar. 21, 2002).  A party that consents to jurisdiction in one forum does not automatically waive its rights to have an action heard in another.  *City of New Orleans v. Mun. Admin. Servs.*, 376 F.3d 501, 504 (5th Cir. 2004).  According to the Fifth Circuit, "for a forum selection clause to be exclusive, it must go beyond establishing that a particular forum will have jurisdiction and must clearly demonstrate the parties' intent to make that jurisdiction exclusive." *Id.* at 504.  The court noted, "It is important to distinguish between jurisdiction and venue when interpreting such clauses.  Although it is not necessary for such a clause to use the word 'venue' or 'forum,' it must do more than establish that one forum will have jurisdiction."  *Id.*  A permissive forum selection clause authorizes jurisdiction in a particular forum, but does not prohibit litigation elsewhere.  *Peavy*, 2002 WL 449582, at *1.

A forum selection clause is not necessarily classified as mandatory or exclusive simply because it contains the word "shall."  *Caldas & Sons, Inc. v. Willingham*, 17 F.3d 123, 127 (5th Cir. 1994) (analyzing *Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75 (9th Cir. 1987)). In *Hunt*, the court explained that, "although the word 'shall' is a mandatory term, here it

mandates nothing more than that the Orange County courts have jurisdiction." *Id.* at 128 (reviewing a forum selection clause that stated, "the laws of the State of California shall govern the validity, construction, [and] interpretation... of this contract. The courts of California, County of Orange, shall have jurisdiction over the parties in any action at law relating to the subject matter or the interpretation of this contract."). "[W]here venue is specified [in a forum selection clause] with mandatory or obligatory language, the clause will be enforced; where only jurisdiction is specified [in a forum selection clause], the clause will generally not be enforced unless there is some further language indicating the parties' intent to make venue exclusive." *K & V Scientific Co. v. Bayerische Motoren Werke Aktiengesellschaft*, 314 F.3d 494, 499 (10th Cir. 2002); *see also Docksider*, 875 F.2d at 764 ("The prevailing rule is clear from these and other cases that where venue is specified with mandatory language[,] the clause will be enforced").

The Plaintiff argues that because in the 2003 Agreement the forum selection clause (Section 5.9) and the dispute resolution clause (Section 5.3) provide for two different fora, the forum selection clause is not mandatory, and trademark and confidentiality disputes between the parties can be brought in any court with jurisdiction. The Court disagrees with Plaintiff's argument.

In *Personal Security & Safety Systems, Inc. v. Motorola Inc.*, 297 F.3d 388 (5th Cir. 2002), the Fifth Circuit distinguished between arbitration clauses and forum selection clauses. In *Motorola*, the Plaintiff argued that the forum selection clause's specific forum precluded only lawsuits in other than the designated forum, not arbitration elsewhere. *Id.* at 395. The court explained that the forum selection clause must be interpreted in the context of the entire agreement. *Id.* The forum selection clause in *Motorola* was interpreted to mean cases should be

litigated in Texas, only when they were not subject to arbitration. *Id.* at 396. The forum selection clause governed "any suit or proceeding," while the arbitration clause governed "all disputes or all claims," evidencing the parties' desire to apply the forum selection clause only when the dispute was not subject to arbitration. *Id.* The court further noted that this was consistent with cases that hold "a forum selection clause cannot nullify an arbitration clause unless the forum selection clause specifically precludes arbitration." *Id.* at n. 11 (citing *In re Winter Park Constr., Inc.*, 30 S.W.3d 576, 578 (Tex. App. - Texarkana 2000, no pet.)). In *Winter Park*, the court held the forum selection clause did not supersede the arbitration clause, explaining that the forum selection clause simply provided where venue would exist and the law that governed in lawsuits. *Id.* at 578. "A contractual choice of law provision will not supersede or obviate an arbitration provision unless the choice of law provision specifically excludes arbitration." *Id.*

In this case, the dispute resolution provision and the forum selection clause apply to different types of disputes. According to Section 5.3 of the 2003 Agreement, "Any disputes arising under Section 3.7 [Trademarks; Branding] or 5.4 [Confidentiality] hereof may be introduced into and heard by any court having jurisdiction, without any requirement to comply with the procedures described above in this Section 5.3." Section 5.9 provides, "In the event either Party asserts a breach or default by the other under the terms of this Agreement, the jurisdiction, venue, and applicable law shall be [the] City of San Diego, California, United States of America . . ." As in *Motorola*, the forum selection clause in issue here specifically addresses suits for breach or default of the 2003 Agreement. The dispute resolution provision governs "disputes," which encompasses an array of other conflicts. Therefore, the more general language

of the dispute resolution clause is not in conflict with the more specific language of the forum selection clause.  "It is a fundamental axiom of contract interpretation that specific provisions control general provisions." *Baton Rouge Oil & Chem. Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 377 (5th Cir. 2002) (citing RESTATEMENT (SECOND) OF CONTRACTS § 203(c)).  Thus, even if the dispute resolution and forum selection clauses provide for different fora, the forum selection clause applies to claims of breach or default.

      Plaintiff argues that the conflicting venue language of the forum selection clause and the dispute resolution clause renders the forum selection clause permissive.  Courts have held forum selection provisions permissive when the language does not prescribe venue nor provide for exclusivity.  *See Mun. Admin. Servs., Inc.*, 376 F.3d at 504-05 ("The undersigned Contractor does further hereby consent and yield to the jurisdiction of the State Civil Courts of the Parish of Orleans..."); *Caldas & Sons, Inc.*, 17 F.3d at 127-28 ("The laws of the Courts of Zurich are applicable."); *Keaty v. Freeport Indonesia, Inc.*, 503 F.3d 955, 956 (5th Cir. 1974) ("This agreement shall be construed and enforceable according to the law of the State of New York and the parties submit to the jurisdiction of the courts of New York."); *K & V Scientific Co.*, 314 F.3d at 496, 500 ("Jurisdiction for all and any disputes arising out of or in connection with this agreement is Munich.  All and any disputes arising out of or in connection with this agreement are subject to the laws of the Federal Republic of Germany."); *Watson v. John K. Burch Co.*, No. 3:02-CV-2555-D, 2003 WL 21145755, at *3 (N.D. Tex. May 14, 2003) ("All lawsuits will be handled in the State of Michigan."); *Von Graffenreid*, 246 F. Supp. 2d at 557, 561 ("Borrower and each other Loan Party hereby consents and agrees that the district court of Dallas County, Texas, or, at Agent's option, the United States District Court for the Northern District of Texas,

Dallas Division, shall have jurisdiction to hear and determine any claims or disputes between Borrower and/or any other Loan Party and Agent and/or Guarantors pertaining to this Agreement or to any matter arising out of or related to this Agreement."); *Blue Cross & Blue Shield of Tex., Inc. v. Dimark Mktg., Inc.*, No. 3:97-CV-1257-D, 1997 WL 405169, at *1 (N.D. Tex. July 15, 1997) ("each party 'agrees to' the jurisdiction of the courts of 'the Commonwealth of Pennsylvania and the Eastern District of the Courts of the United States.'").

On the other hand, courts have held that forum selection clauses are mandatory and enforceable when they provide for exclusivity as to where a case can be brought. *See Kevlin Servs., Inc. v. Lexington State Bank*, 46 F.3d 13, 14-15 (5th Cir. 1995) (emphasis added) ("This contract shall be interpreted and construed in accordance with the laws of the State of Texas. The legal *venue* of this contract and any disputes arising from it shall be settled in Dallas County, Texas."); *Docksider Ltd.*, 875 F.2d at 763-64 (emphasis added) ("This agreement shall be deemed to be a contract made under the laws of the State of Virginia, United States of America, and for all purposes shall be interpreted in its entirety in accordance with the laws of said State. Licensee hereby agrees and consents to the jurisdiction of the courts of the State of Virginia. *Venue* of any action brought hereunder shall be deemed to be in Gloucester County, Virginia."); *Klinghoffer v. Mama Fu's Noodle House, Inc.*, No. 3-04-CV-1695-L, 2004 WL 2583632, at *1, *3 (N.D. Tex. Nov. 12, 2004) (emphasis added) ("Each party agrees that any legal action or proceeding against the other party that arises out of or is related to this Agreement *may only be brought* in the courts of the State of Georgia or of the United States of America for the Northern District of Georgia and by entering into this Agreement each party accepts and consents to the jurisdiction of the aforesaid courts."); *Dorsey v. N. Life Ins. Co.,* No. 04-0342, 2004 WL

11

2496214, at *1, *4 (E.D. La. Nov. 5, 2004) (emphasis added) (citing *Docksider, Ltd.*, 875 F.2d at 763) ("This Agreement is governed by the laws of the State of Washington. In the event of a lawsuit arising out of this Agreement, the Executive General Agent agrees that *venue* shall be laid in King County, Washington."); *Marengo Films, Inc. v. Koch Int'l LLC*, No. 3:03-CV-0369-P, 2003 WL 21435728, at *1, *5 (N.D. Tex. June 16, 2003) (emphasis added) ("This agreement shall be governed exclusively by the laws of the State of New York applicable to contracts made and to be performed entirely in such State. The parties agree to the *exclusive jurisdiction* of the Southern District Court of New York, New York."); *Bonded Inspections, Inc. v. Northrop Grumman Corp.*, No. 3:98-CV-0214-D, 1998 WL 185518, at *1-*2 (N.D. Tex. Apr. 10, 1998) (emphasis added) ("*Exclusive jurisdiction and venue* shall lie in the State of New York, County of Nassau, including the United States Federal Courts therein.").

In *Docksider*, the Ninth Circuit distinguished its earlier decision in *Hunt* (in which the court held the forum selection clause was permissive) by explaining that the forum selection clause at issue specifically prescribed venue. *Docksider, Ltd.*, 875 F.2d at 763. The Ninth Circuit explained that the clause required enforcement because the parties not only consented to jurisdiction in Virginia, but agreed to mandatory venue in Virginia. *Id.* "This mandatory language makes clear that venue, the place of suit, lies exclusively in the designated county." *Id.* In *Dorsey*, the court held the explicit venue language in the forum selection clause was not ambiguous regarding its exclusivity, and was therefore mandatory. *Dorsey*, 2004 WL 2496214, at *4.

The forum selection clause in this case is similar to the clauses in *Dorsey* and *Docksider*. The 2003 Agreement forum selection clause states, "the jurisdiction, venue, and applicable law

shall be [the] City of San Diego, California, United States of America . . ." This clause addresses jurisdiction and venue, fixing such in the City of San Diego, California. While the clause does not expressly use the language "exclusively" or "only," the Court construes it, in context, to be so limited. The specific venue requirement makes this forum selection clause mandatory and pursuant to it, a lawsuit must be brought in state or federal court in San Diego, California.

C.    **Applicability of Forum Selection Clause to Claims**

The Court must next determine whether the forum selection clause applies to the claims asserted in this case. *Soil Bldg. Sys. v. CMI Terex Corp.*, No. 3:04-CV-0210-G, 2004 WL 1283966, at *4 (N.D. Tex. June 9, 2004); *Woolf v. Mary Kay, Inc.*, 176 F. Supp. 2d 642, 647 (N.D. Tex. 2001). The court must examine the language of the contract to determine which causes of action are governed by the forum selection clause. *Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d 216, 222 (5th Cir. 1998); *Soil Bldg. Sys.*, 2004 WL 1283966, at *5. "If the *substance* of [the plaintiff's] claims, stripped of their labels, does not fall within the scope of the [forum selection] clause [ ], the clause[ ] cannot apply." *Soil Bldg. Sys.*, 2004 WL 1283966, at *4 (quoting *Roby v. The Corp. of Lloyd's*, 996 F.2d 1353, 1361 (2d Cir. 1993)) (alteration in original). "Claims that arise out of the contractual relationship and implicate the agreement are subject to the forum selection clause." *Kessmann & Assoc., Inc. v. Barton-Aschman Assoc., Inc.*, 10 F. Supp. 2d 682, 688 (S.D. Tex. 1997); *see also Tex. Source Group, Inc. v. CCH, Inc.*, 967 F. Supp. 234, 238 (S.D. Tex. 1997); *Hoffman v. Burroughs Corp.*, 571 F. Supp. 545, 547 (N.D. Tex. 1982). In other words,

> the precise issue before this Court is whether the facts and claims alleged in the. . . complaint have a direct or indirect connection, link or association with, or relation

13

> to (1) the contractual relationship evidenced by the . . . Agreement; (2) an interpretation of the . . . Agreement; (3) the facts that would support a breach of contract action based on the . . . Agreement; or (4) the subject matter of the . . . Agreement.  In arriving at its decision, the Court, taking the allegations in the . . . complaint as true and resolving factual conflicts in the documentary submissions in favor of the plaintiff, looks to whether a connection, link, association with or relation to the . . . Agreement, exists by reason of an established or discoverable relation.

*Smith v. Lucent Techs., Inc.*, No. 02 - 0481, 2004 U.S. Dist. LEXIS 4074, at *37 (E.D. La., Mar. 16, 2004).  If such a connection is found between the claims at issue and the 2003 Agreement, the forum selection clause applies.

The Plaintiff argues the forum selection clause does not apply to any of its claims.  It is asserting the following claims: (1) Count I - Patent Infringement; (2) Count II - Breach of Contract; (3) Count III - Unauthorized Trademark Reproduction in Violation of the Lanham Act; (4) Count IV - Infringement of Common Law Trade Dress Rights; and (5) Count V - Common Law Unfair Competition.  The relevant language at issue from the 2003 Agreement forum selection clause is, "In the event either Party asserts a breach or default by the other under the terms of this Agreement, the jurisdiction, venue, and applicable law shall be [the] City of San Diego, California . . ."

**1.      Count I - Patent Infringement**

Plaintiff argues that resolution of the Patent Infringement claim does not depend on interpretation of either the 2001 Agreement or the 2003 Agreement.  Plaintiff explains that because the contracts do not explicitly address patents or patent infringement, the forum selection clause is inapplicable to such a claim.  Defendant argues that the 2003 Agreement authorized it to manufacture and sell Plaintiff's products embodying inventions in the patent at issue, without a

time limit to market and sell such products.  Thus, one of the Defendant's defenses to the patent infringement claim is based on the 2003 Agreement.  "If enforcement of a provision in the [Agreement] is . . . a defense to a claim, that claim involves a right or remedy under the contract and should fall within the scope of the forum selection clause."  *Penn, L.L.C. v. New Edge Network, Inc.*, No. 03 C 5496, 2003 U.S. Dist. LEXIS 17664, at *7 (N.D. Ill. Oct. 1, 2003).  Thus, the Court finds that the allegations in this claim have a "direct or indirect connection, link or association with, or relation to" the 2003 Agreement.  *See Lucent Techs., Inc.*, 2004 U.S. Dist. LEXIS 4074, at *37.  Therefore, the forum selection clause is applicable to this claim.

**2.      Counts II & III- Breach of Contract & Unauthorized Trademark Reproduction in Violation of the Lanham Act**

Because the Plaintiff asserts the same argument for both of these claims, the Court considers them together.  Plaintiff argues the forum selection clause does not apply to the breach of contract claim because the breach asserted involves use of licensed marks and confidentiality.  Plaintiff further states that such subject matter is expressly allowed to "be introduced into and heard by any court having jurisdiction," pursuant to Section 5.3 of the 2003 Agreement.  In addition, Plaintiff asserts that the breach related to Plaintiff's licensed marks falls under Section 7 [Intellectual Property] of the 2001 Agreement, and that Texas is the proper venue and jurisdiction to bring such a claim under Section 10 [Forum Selection] of the 2001 Agreement, and both Sections survive termination according to the Survival Clause, Section 5.7 of the 2001 Agreement.  Plaintiff makes a similar argument regarding the Lanham Act claim.

The forum selection clause specifically addresses breach or default under the 2003

15

Agreement. The breach of contract and Lanham Act claims fall within the purview of the 2003 Agreement's forum selection clause because the 2003 Agreement must be interpreted to determine whether the Defendant violated such rights of the Plaintiff, or whether it was acting in accordance with the Agreement. In addition, the 2003 Agreement is the controlling agreement as explained above. Thus, the forum selection clause is applicable with regard to both claims.

### 3.     Count IV - Infringement of Common Law Trade Dress Rights

Plaintiff argues that because trade dress rights are another form of trademark rights, and trademark claims can be brought in any jurisdiction pursuant to Section 3.7 [Trademarks; Branding] of the 2003 Agreement, the forum selection clause does not apply. As explained above regarding the Lanham Act claim, interpretation of the 2003 Agreement is necessary to determine whether the Defendant violated the Plaintiff's trademark rights. Therefore, the forum selection clause applies to this claim.

### 4.     Count V - Common Law Unfair Competition

Plaintiff argues that Defendant "unfairly competed by infringing [Plaintiff's] common law trade dress rights." Plaintiff further states that this claim falls under Section 3.7 [Trademarks; Branding] of the 2003 Agreement, and can be brought in "any court having jurisdiction," since the forum selection clause does not apply. To determine whether Defendant violated Plaintiff's trade dress rights, interpretation of the contract is necessary. If no violation occurred, then no unfair competition occurred. Because interpretation of the contract is necessary to determine if such claim can stand, the forum selection clause applies to this claim.

**D.     Deference**

The Court must next determine the amount of deference to be given to the forum selection clause.  The amount of deference a court should give to a forum selection clause is determined by whether the Defendant has requested dismissal for improper venue under 28 U.S.C. § 1406(a) or requested transfer under § 1404(a).  *See Int'l Software Sys., Inc. v. Amplicon, Inc.*, 77 F.3d 112, 115-16 (5th Cir. 1996); *Pugh v. Arrow Elecs., Inc.*, 304 F. Supp. 2d 890, 893 (N.D. Tex. 2003); *Von Graffenreid*, 246 F. Supp. 2d at 561; *Beauticontrol, Inc. v. Burditt*, No. 3:01-CV-0744-M, 2001 WL 1149360, at *2 (N.D. Tex. Sept. 26, 2001).  In this case, the Defendant has moved to dismiss, or in the alternative, to transfer for improper venue pursuant to § 1406(a).  28 U.S.C. § 1406(a) states, "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

Where a party seeks dismissal under § 1406(a), the forum selection clause is "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances."  *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972).  Enforcement may be "unreasonable" when:

> (1) the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement will for all practical purposes be deprived of his day in court because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state.

*Haynsworth*, 121 F.3d at 963.  However, the party seeking to avoid enforcement of the forum selection clause bears a heavy burden of proof.  *Id.*  "Where the contract contains a valid forum

17

selection clause, dismissal rather than transfer is appropriate if the case is filed in the wrong district." *Von Graffenreid*, 246 F. Supp. 2d at 562 (citing *Amplicon*, 77 F.3d at 115). The Fifth Circuit has upheld dismissal as an appropriate means of enforcement of a forum selection clause. *Amplicon, Inc.*, 77 F.3d at 114. The Plaintiff does not specifically address whether the forum selection clause is unreasonable. Rather, the Plaintiff only sets forth reasons why the case should not be transferred pursuant to the "interest of justice" balancing of 28 U.S.C. § 1404(a).

A transfer for improper venue falls under § 1406(a). *Jackson v. W. Telemarketing Corp. Outbound*, 245 F.3d 518, 523 (5th Cir. 2001); *Soil Bldg. Sys*, 2004 WL 1283966, at *6. The court has broad discretion in determining whether to dismiss or transfer a case in the interest of justice under 28 U.S.C. § 1406(a). *Soil Bldg. Sys.*, 2004 WL 1283966, at * 6. "[I]n considering a defendant's motion to transfer, courts in this circuit should use an 'interest of justice' balancing test based on § 1404 and § 1406 in which the forum selection clause is only one consideration among many, whereas with a motion to dismiss, a court should presume that the clause is valid unless a defendant proves fraud or overreaching in relation to the clause itself." *Beauticontrol, Inc.*, 2001 WL 1149360, at *5. The court should look at convenience of the forum given the parties' expressed preference in the forum selection clause, the fairness of transferring the case in light of the forum selection clause, and the relative bargaining power of the parties. *Id.* at *6 The court should also weigh the convenience of the witnesses and "those public-interest factors of systemic integrity and fairness that, in addition to private concerns, come under the heading of 'the interest of justice.'" *Id.* (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30 (1988)). In most cases, the movant bears the burden of proving transfer is appropriate. *Watson*, 2003 WL 21145744, at *4. However, "the presence of a valid and

enforceable forum selection clause shifts the burden of persuasion to the nonmovant who is attempting to avoid enforcement." *Id.*

Defendant argues that the parties' expressed preference in the 2003 Agreement was San Diego, California. Defendant avers Plaintiff has the burden of persuading the Court why the forum selection clause should not be enforced. It explains that Plaintiff is "a sophisticated business entity that has been in business for nearly 80 years, has over 500 franchise-owned centers throughout the United States and Canada, and has sold products or services to nearly 50 million households and businesses." In addition, the 2003 Agreement was executed in San Diego, California, and California law is applicable in interpretation of the contract. Defendant also argues both parties were represented by counsel in drafting this agreement. Therefore, Defendant asserts the case should be transferred to San Diego, California.

Using the interest of justice analysis, and considering the convenience of the parties, and witnesses the Plaintiff suggests the Northern District of Texas is the appropriate venue. Plaintiff's headquarters are in Dallas, Texas, and Plaintiff's representatives would have to travel over 1,000 miles to San Diego, California. Plaintiff also argues its "officers and key employees are located in Dallas, Texas," "most, if not all" documents related to Plaintiff's claims are located in Dallas, no relevant documents or witnesses are located in San Diego, it would significantly burden resources of the company to travel to San Diego for court appearances, and Plaintiff would have to retain local counsel in California. Additionally, Plaintiff argues whether venue is in San Diego or Dallas, Defendant will still have to travel over 1,000 miles. Defendant will have to retain local counsel in either city, Defendant does not have a sales representative in either city, and Defendant has a comparable number of warranty centers in both cities. Thus,

Plaintiff asserts there is no reason to override its choice of forum in Dallas.

In analyzing the interest of justice factors, the Court agrees with the Defendant. In the 2003 Agreement, both parties contractually agreed to choose San Diego, California, as the forum. Plaintiff's concerns should have been raised at the time of drafting the forum selection provision, not after the fact. Both parties were represented by attorneys, and there is no evidence of any unequal bargaining power. It is not unfair or unreasonable to enforce a forum selection provision to which both parties contractually agreed to be bound.

This Court will enforce the contract's forum selection clause. Because the forum selection clause mandates the case be filed in San Diego, California, venue in this Court is "wrong." However, as transfer is an appropriate means under § 1406 to enforce the forum selection clause when a case is filed in the wrong district, this Court transfers the case to the United States District Court for Southern District of California, located in San Diego, California. *See* 28 U.S.C. § 1406(a) (2005).

### III.   Conclusion

For the reasons stated above, the Defendant's Motion to Dismiss is **DENIED** and Defendant's Motion to Transfer Venue is **GRANTED**.

**SO ORDERED.**

May 9, 2005.

_____
BARBARA M. G. LYNN
UNITED STATES DISTRICT JUDGE